## PARKER et al. v. FIRST TRUST & SAVINGS BANK et al.

(Circuit Court of Appeals, Ninth Circuit.   September 7, 1920.)

No. 3430.

1. **Master and servant ☞70(4)—Contract of employment held not terminated by notice requesting new wage schedule.**

A contract between an employer and a committee of employés fixing terms of employment, including the schedule of wages, which required either party desiring to change any of the regulations to give the other party 30 days' notice, *held* not terminated by a written notice by the employés, requesting a readjustment of the wage schedule, and the employés are not entitled thereafter to recover for their services on quantum meruit.

2. **Master and servant ☞16—War Labor Board's arbitrament of wage dispute held not binding.**

An interurban railroad company is not bound by a decision of the War Labor Board, increasing the wages of its employés, where it had refused to submit the controversy to the board, because it had no funds with which to pay any increased wages, though its superintendent, in trying to persuade the men to continue work, advised them to await the action of the War Labor Board.

3. **Master and servant ☞16—Submission of wage dispute to War Labor Board's arbitrament held not shown.**

The receiver of a railroad company is not bound by decision of the War Labor Board, making an award of increased pay retroactive, because his superintendent had informed the men he could do nothing toward increasing their pay until the War Labor Board rendered its decision, where the receiver appeared before the War Labor Board and expressly declined to submit the matter to it.

Appeal from the District Court of the United States for the Northern Division of the Eastern District of Washington; Frank H. Rudkin, Judge.

Suit by the First Trust & Savings Bank against the Spokane & Inland Empire Railroad Company, in which F. E. Connors was appointed receiver of the defendant railroad company. A claim by Everett J. Parker and others against the receiver for retroactive payments of a wage increase was denied, and claimants appeal. Affirmed.

Turner, Nuzum & Nuzum, of Spokane, Wash., for appellants.

Silas H. Strawn and W. H. Jacobs, both of Chicago, Ill., and Graves, Kizer & Graves and Post, Russell & Higgins, all of Spokane, Wash., for appellees.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Judge. Claimants, appellants, are members of the Amalgamated Association of Street & Electric Railway Employés, a corporation, and worked as motormen and conductors for the Spokane & Inland Empire Railroad Company in Spokane. Claimants worked under an agreement made in July, 1918, between the com-

pany and the executive committee of the association, wherein it was provided:

"The following rules and rates of pay effective February 8, 1918, will constitute an agreement between the Spokane & Inland Empire Railroad Company, Traction Division, and its conductors and motormen."

After provisions for definite pay, it was agreed:

"Either party desiring to change any of the foregoing rules or regulations shall give the other party 30 days' notice in writing of the change, or changes, so desired."

On July 8, 1919, the claimants notified the defendant company that the men wished "to reopen their agreement for further consideration of the wage scale within the next 30 days." The company asked the men to submit a memorandum of the changes desired to be made in the schedule then in effect. On August 5th the superintendent wrote to the claimants that the railway company was not in a position to incur additional expense at that time, and asked the men to postpone their demands for the present. The claimants answered that an early settlement was requested "on a new agreement or offer to submit the proposition to the War Labor Board for arbitration." On August 14th, at a conference between the company and the claimants, the superintendent of the company, Mr. Elliott, gave Mr. Parker, the president of the association of the employés, to understand that there would be no objection whether the claimants worked 8, 9, or 10 hours, but that it was entirely out of the question to grant an increase of pay owing to the financial condition of the company. Mr. Parker testified:

"While he [Elliott] admitted that we should have more money, and he would like to grant it to us, that he could not do it, owing to the fact that he could not get the money. He had no way of getting the money to pay us, so there wasn't very much more said, except that he asked in what way we figured we could increase the revenue of the company, and we told him that we had no way to increase the revenue of the company; what we were interested in was the wages. And we proposed submitting this proposition to the War Labor Board. * * * And Mr. Elliott partially agreed to that, but he asked us to defer action until he made a trip to Portland and communicated with St. Paul, and that he would give us an answer when he returned."

Witness said that a few days afterwards Elliott advised them that he had been unable to do anything with reference to the increase of wages at that time. The men had another conference with the superintendent, and again proposed submitting the whole case to the War Labor Board for settlement; but the company, by its agents, declined to do this, whereupon the men submitted the matter to the War Labor Board. This was in the latter part of August. The testimony was that at that time there was unrest among the men, and that further conferences were had. The superintendent of the railway company advised the men to go ahead and not delay matters, to change the runs a little, and not to discommode the company, as long as their case was before the War Labor Board. Witness said that on two prior contracts, where the men had asked new wage arrangements, the company had made the wages retroactive to the date of

the expiration of the former agreement. On cross-examination, Mr. Parker testified that the company had declined to accede to the demand in behalf of the men, and that the men had worked under the old wage scale, and were paid thereunder by checks in the usual form.

One of the employés of the railroad company testified that the superintendent wanted the men to go ahead with the work, and—

"he gave the men the impression that we were working under the Tacoma scale; that our last agreement had been signed under the Tacoma scale, and as we were working in the same district as Tacoma, and says whatever Tacoma was going to get we were going to get, and as all of our contracts were to be retroactive, we were to be paid, and that the men would be taken care of, if they stayed on the job."

On January 10, 1919, suit in foreclosure of the mortgage of the railroad company was filed in the United States District Court by the First Trust & Savings Bank as trustee. Receiver of the property and assets of the corporation was appointed. On March 27, 1919, the War Labor Board made report, and after reciting that the receiver had declined to submit the matter, recommended that the wages of platform men be increased to certain specified rates and the receiver of the railroad company should be permitted to charge higher fares on city and interurban lines. The receiver declined to act on the recommendation of the War Labor Board, but April 6th did make a horizontal increase of wage per hour for all the men, and drew a contract for the men to sign, but up to the time of the hearing of the present controversy the men had not signed it. The superintendent told the men that the proposed agreement was the best the company could do, but said nothing to the men about the agreement being retroactive, but said he "hoped" that they would get their back pay.

On April 7th claimants filed for unpaid wages for labor performed from August 8, 1918, to April 6, 1919, as recommended by the National War Labor Board March 27, 1919, and "agreed to in contract" with the company. The master disallowed the claims, and upon review the District Court held there could be no recovery upon a quantum meruit, or upon the ground that the railroad company and the receiver were bound by the decision of the War Labor Board. Claimants have appealed.

[1] We find it impossible to arrive at the conclusion that the contract of employment between the association and the railroad company was terminated upon the expiration of the 30 days' notice, and that from the expiration of such notice the men became entitled to recover as upon a quantum meruit. The testimony of Mr. Parker does not permit of such a legal view. Even though the course pursued under prior similar contracts was that, when differences arose, adjustments of wages operated retroactively in favor of the men, the evidence as to this particular contract affirmatively shows that one of the parties positively refused to yield to any relinquishment, and stated as a ground inability to pay increased wages.

[2] Nor can it be held that the railroad company was bound by the decision of the War Labor Board, for it is proven beyond all question that the representatives of the company always declined to sub-

mit the question of wages to the War Labor Board. The circumstance that the company refused to appear before the board, and that it refrained from having any communication with it, but strengthen the conclusion that the railroad company did not intend to subject the matter to the arbitrament of that board. And as further evidence that the contract was kept alive we have the circumstance that the men continued to work, accepted wages provided for under the scale embodied in the contract of February 10, 1918, and never made any agreement for increased wages with the company. It is not contended that there was a positive obligation on the part of the company to submit the matter to the War Labor Board, and we can deduce no rule of estoppel against the company because it knew that the men had appealed to that tribunal. We are inclined to believe that the representative of the company was earnestly trying to persuade the men that they should keep on with their work; but, inasmuch as the company had declined to submit to the War Labor Board, the advice to them that they should await the action of that body cannot be regarded as acquiescence in any award to be made.

Undoubtedly the first notice sent to the company was intended to make the question of wages the subject of conference, with a view of making new agreements; but the company made it plain that it would not accede to the requested increases. Afterwards the receiver increased the wages of the men on April 6, 1919, but declined to make the increase retroactive. What we have said is intended to apply to any claims that the men might have for increase in wages prior to the date of the appointment of the receiver, or January 28, 1919, and leads to the conclusion that the contract obtained up to that time.

[3] Counsel for the appellant urges that, even though the view of the court is against a right of recovery for time prior to the appointment of a receiver, nevertheless there should be an award in favor of the employés from January, 1919, when the receiver was appointed, until March 28, 1919, and that such award should be at least what the War Board recommended. Mr. Parker testified that he conferred with Mr. Ganoway, superintendent, by direction of the receiver; that Ganoway said he could do nothing until the War Board had decided the matter then before it; that in the meantime the board gave a decision increasing the scale of pay, but not as much as the men had wanted; that the receiver, however, offered a flat raise, but not as much as was asked, but up to the time of trial the men had not accepted it; and that Ganoway did not say anything about the pay being retroactive, but "hoped" the men would get back pay. It is proven that the men were restless, and persistently sought for an increase of pay; but, on the other hand, the receiver appeared before the War Labor Board on February 11 and 12, 1919, and expressly declined to submit the matter complained of by the employés to the board, and stated that as the receiver he was acting only with the funds derived from the property in his hands, and that he would be unable to comply with any award made which increased expenses.

It is apparent that, while the receiver was trying to keep the men satisfied and hoped that they would get such increases as the War

Labor Board might advise should be paid them, still, when it came to action, he was explicit in stating the financial limitations which must control his action. Under the circumstances, a court can find no ground upon which to rest a decision which would ignore the terms of the contract or require the receiver to act otherwise than he did.

Affirmed.